**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Lonnie Jones, | * | |
| | | Case No. 2:21-cv-1830 |
| On behalf of himself and those | * | |
| similarly situated, | | Judge |
| | * | |
| Plaintiff, | | Magistrate Judge |
| | * | |
| v. | | **JURY DEMAND ENDORSED HEREON** |
| | * | |
| Converse Electric, Inc. | | |
| 3783 Gantz Road | * | |
| Grove City, Ohio 43123, | | |
| | * | |
| Defendant. | * | |

<u>**PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FAIR LABOR STANDARDS ACT AND OHIO LAW**</u>

Now comes Plaintiff Lonnie Jones ("Jones" or "Plaintiff" or "Named Plaintiff"), by and through undersigned counsel, individually and on behalf of other members of the general public similarly situated, for his Complaint against Converse Electric, Inc. ("Converse" or "Defendant") for its failure to pay employees overtime wages seeking all available relief under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111.03 and 4111.08 ("the Ohio Wage Act"); and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts"). Named Plaintiff's FLSA claims are asserted as a collective action pursuant to 29 U.S.C. § 216(b) while the Ohio Acts claims are asserted as a class action under Rule 23. The following collective and class action allegations are based on personal knowledge as to

the Named Plaintiff's own conduct and Defendant's own business records, and they are made on information and belief as to the acts of others.

Second, Plaintiff's Complaint also includes individual claims of interference with Plaintiff's rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq.* and retaliation for attempt to and/or exercising his rights under the FMLA given that he was terminated shortly after his return from medical leave.

Finally, Plaintiff was discriminated against by Defendant due to his disability and in retaliation for going out on medical leave for his disability in violation of Ohio Revised Code § 4112, *et seq.* ("Chapter 4112").

## I. JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for violations of the FLSA and the FMLA.

2. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. § 1367, as this Complaint raises additional claims pursuant to the laws of Ohio (the Ohio Acts), claims of discrimination/retaliation under Chapter 4112, and the Ohio Constitution, over which this Court maintains supplemental subject matter jurisdiction because they form a part of the same case or controversy.

3. Venue is proper in this forum pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to their claims occurred in the Southern District of Ohio, and Defendant has its principal place of business or it otherwise conducted substantial business in the Southern District of Ohio.

## II. FACTUAL ALLEGATIONS

### A. Named Plaintiff

4.     Named Plaintiff is an individual, United States citizen, and resident of Franklin County, Ohio, but at all times relevant he worked for Defendant in this judicial district.

5.     Named Plaintiff worked in the position of warehouse associate, which is an hourly, non-exempt position. During all times relevant, Named Plaintiff was an "employee" of Defendant as defined in the FLSA, the FMLA, the Ohio Acts, the Ohio Constitution, and Chapter 4112.

6.     Mr. Jones worked as a warehouse associate beginning in approximately March, 2017 until his employment was terminated shortly after his return from medical leave on or about January 30, 2021.

7.     Named Plaintiff brings this action on behalf of himself and on behalf of those similarly situated and has given his written consent to bring this action to collect unpaid overtime compensation under the FLSA. Named Plaintiff's consent form is being filed along with the Complaint pursuant to 29 U.S.C. § 216(b) (*Consent to be Party Plaintiff*, attached hereto as **Exhibit A**).

### B. Defendant Converse Electric, Inc.

8.     Defendant is a domestic, for-profit corporation with its principal place of business located at 3783 Gantz Road, Grove City, Ohio 43123 and can be served with process at that same address.

9.     Defendant supplies a wide variety of electrical services for industrial, commercial, and residential projects, including, but not limited to building infrastructures, electrical repairs, maintenance and installation of electricity for manufacturing and production, construction projects, and home electric services, among other services.

10.     Defendant employs hundreds of similarly situated employees as Plaintiff out of its principal place of business.

11.     Defendant is and has been doing business in this judicial district.

12.     At all times relevant, Defendant has been an "employer" as that term is defined by the FLSA, the FMLA, the Ohio Acts, the Ohio Constitution, and Chapter 4112.

13.     During relevant times, Defendant maintained control, oversight, and direction over Named Plaintiff and other similarly situated employees, including the promulgation and enforcement of policies affecting the payment of wages and overtime.

14.     During relevant times, Defendant has benefitted from the work performed by Named Plaintiff and those similarly situated.

15.     Upon information and belief, Defendant operates/operated and controls an enterprise and employs employees engaged in commerce or in the production of goods for commerce, or it has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and Defendant has had an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

### Facts Relevant to Unpaid Overtime Compensation

16.     Defendant's workweek is Monday through Sunday and it pays its hourly, non-exempt employees on a weekly basis.

17.     During his employment with Defendant, Named Plaintiff and those similarly situated were not fully and properly paid in accordance with the minimum requirements of the FLSA for all of his compensable hours worked for two primary reasons.

1.     Failure to Pay Overtime at the Correct Regular Rate of Pay

18.     First, Defendant did not properly calculate overtime based on its ***regular rate of pay***, as defined by the FLSA, but instead calculated overtime based on its hourly rate of pay, resulting in unpaid overtime wages for the three years preceding the filing date of this Complaint and continuing until trial.

19.     During his employment with Defendant, Named Plaintiff and other similarly situated employees were not fully and properly paid for all of their compensable hours worked because Defendant did not properly calculate their regular rates of pay for the purposes of meeting the minimum requirements set forth in the FLSA, which resulted in unpaid overtime wages.

20.     Defendant pays Named Plaintiff and approximately one hundred other similarly situated employees an hourly wage for hours worked (hereinafter "Base Hourly Wage").

21.     In addition to the Base Hourly Wage, Defendant pays its employees with additional forms of remuneration that should have been included in the calculation of employees' regular rates of pay for overtime compensation, including, but not limited to Defendant reimbursing Plaintiff and similarly situated others for expenses normally incurred for their benefit such as cell phone allowances for use of their personal cell phone.[1]  However, upon information and belief, Defendant did not include such reimbursements when determining the employees' regular rate of pay (hereinafter "Additional Remuneration").  *See* 29 C.F.R §§ 778.207(b), 778.211(c).

22.     During the last three years preceding the filing of this Complaint, Named Plaintiff and other similarly situated employees regularly received their Base Hourly Wage and Additional Remuneration as described above in various workweeks.

---

[1] Reimbursements for normal everyday expenses are to be included in regular rate calculations. See 29 C.F.R § 778.217(d).

23.     When Defendant paid Named Plaintiff and other similarly situated employees both their Base Hourly Wage and Additional Remuneration, Defendant failed to properly calculate its employees' regular rate of pay during workweeks when they worked over 40 hours in one or more workweek(s) for the purposes of overtime pay because Defendant did not include the Additional Remuneration in its regular rate calculations for overtime wages. Consequently, Defendant failed to properly compensate Named Plaintiff and other similarly situated employees the overtime wages they were due in accordance with the minimum requirements of the FLSA.

24.     Instead, Defendant paid Named Plaintiff and other similarly situated employees overtime compensation at one-and-one-half times their **Base Hourly Wage** and not one-and-one-half times their ***regular rate of pay*** as that phrase is defined under the FLSA. *See* 29 U.S.C. § 207(e).

25.     In 2019, Defendant's own business records reflect that during the non-exhaustive workweek of April 15, 2019 to April 21, 2019, Plaintiff worked at least 44.25 hours. He was compensated at a rate of $18 per hour for the first 40 hours and $27 per hour for the 4.25 hours of overtime for that workweek. During the same workweek, Defendant paid Plaintiff $50 "Nontax" as Additional Remuneration. However, Defendant failed to re-calculate the Additional Remuneration into his regular rate of pay for purposes of calculating his overtime rate, resulting in unpaid overtime compensation. A true and accurate copy of this pay details for this sample workweek is attached hereto as **Exhibit B**. This sample workweek is just one of many throughout Plaintiff's employment.

2.     Defendant's Automatic Meal Deduction Results in Unpaid Overtime

26.     Second, during all times relevant, Defendant employed Named Plaintiff and approximately one hundred other hourly, non-exempt workers, including Plaintiff, who are subject

to an Automatic Meal Deduction of thirty (30) minutes per day for a purported "meal period" ("Automatic Meal Deduction Policy").

27.     However, Plaintiff and others similarly situated regularly did not receive a fully uninterrupted meal period of thirty (30) minutes per day because the meal breaks were interrupted with substantial job duties performed for Defendant's benefit.

28.     Defendant knew or should have known that Plaintiff and others similarly situated did not receive a bona fide meal period.

29.     Defendant did not have an established policy to report missed or interrupted meal periods.

30.     Instead, it simply deducted 30 minutes per day regardless of whether employees had an uninterrupted meal period.

31.     As a result, during workweeks when Plaintiff and others similarly situated worked 40 or more hours, they are owed unpaid overtime compensation and other compensation.

32.     Upon information and belief, Defendant, at all times relevant hereto, was fully aware of the fact that it was legally required to comply with the wage and overtime payment laws of the United States and of the State of Ohio.

33.     During relevant times, Defendant had knowledge of and acted willfully regarding its conduct described herein.

34.     Defendant is in possession and control of necessary documents and information from which Named Plaintiff and similarly situated employees would be able to precisely calculate damages.

35.     For the three years preceding this filing, Defendant applied the same pay practices and policies to all hourly, non-exempt employees, including Named Plaintiff.

36. Named Plaintiff and other similarly situated employees have not been fully and lawfully compensated for all of their compensable overtime hours worked due to the aforementioned policies and practices.

**Facts Relevant to Plaintiff Jones's Individual Claims Relating to his Wrongful Termination**

37. During his employment with Converse, Mr. Jones met or exceeded his superiors' expectations and was qualified to perform the essential functions of his position with or without an accommodation.

38. As a warehouse associate, his primary job duties consisted of shipping and receiving, intake of delivery of tools and materials in the warehouse, helping out at the warehouse, including making deliveries in the company vehicle from the warehouse to both residential and commercial properties depending on the needs of Converse, cleaning warehouse, load/unload tools and material for job sites, and other miscellaneous job duties. His scheduled shift was generally from 6:00 am to 2:30 pm – although he also regularly performed work before and after his scheduled shifts. As more fully outlined below, prior to Mr. Jones's medical leave, he did not have any performance issues.

39. Mr. Jones suffers from alcoholism, which constitutes a disability because it is a physical/mental impairment, actual or perceived, that substantially limits one or more of his major life activities.

40. Defendant was aware of Mr. Jones' disability.

41. During Plaintiff's employment, his father passed away which exacerbated his disability.

42. On or about November 13 or 14, 2020, Mr. Jones called Defendant's employee benefits hotline and requested medical leave to seek treatment for his disability.

43. Converse's human resources department was aware of Mr. Jones seeking medical leave and emailed him documents to complete, including short-term disability and Family and Medical Leave Act paperwork.

44. Mr. Jones timely completed and returned the required paperwork to Converse.

45. Mr. Jones subsequently sought treatment at a treatment facility center called Woods on Parkside, located in Gahanna, Ohio. From around November 16, 2020 until around December 6, 2020, Mr. Jones continued treatment at this facility.

46. On or about December 6, 2020, Mr. Jones transitioned to a different treatment center called Recovery Village of Columbus Ohio, located in Groveport, Ohio, because Mr. Jones was diagnosed with COVID-19 at the first facility.

47. For the next thirty (30) days, Mr. Jones completed his treatment program at the second facility. However, on or about December 26, 2020, Mr. Jones's wife received a termination letter from Converse. Upon receipt of said termination letter, Mr. Jones's wife contacted the second facility and made sure Converse was aware that Mr. Jones was still undergoing treatment for his disability. Converse was aware that Mr. Jones was still obtaining medical treatment from that point forward.

48. Mr. Jones completed and returned FMLA paperwork, which indicated that he required intermittent medical leave for therapy from January 11, 2021 until around April 11, 2021 for continuing treatment and/or follow up appointments for his disability.

49. On or about January 13, 2021, Mr. Jones returned to work.

50. However, upon his return from medical leave, he was called into a meeting with Laura Cameron, his direct supervisor, and Joel Kahn, an upper managerial employee.

51.     During this meeting, Defendant informed Mr. Jones that his job duties were going to be materially different. For example, although he retained the title of warehouse associate, Converse changed his schedule from 6:00 am to 2:30 pm to 7:00 am to 3:30 pm.

52.     In addition, Converse materially altered his primary job duties. For example, while Mr. Jones previously made deliveries to and from residential/commercial properties, he was demoted to administrative job duties in the warehouse.

53.     As a result, Converse did not return him to the same or similar position. Mr. Jones remained a solid worker and continued to follow Converse's instructions and perform the essential functions of his position without issue.

54.     On or about January 27, 2021, Mr. Jones received a termination letter authored by Jennifer Hunt, Human Resources Manager. In the letter, Converse accused Mr. Jones of allowing a visitor (scrapper) to pick up scraps of items from a storage trailer in the south corner of the parking lot on Saturday, January 23, 2021.

55.     Upon information and belief, said storage trailer was empty as of January 22, 2021.

56.     In fact, one of Mr. Jones' co-workers at the time also confirmed that the storage trailer was empty on January 22, 2021.

57.     Mr. Jones did not work on Saturday, January 23, 2021, so he was surprised by the false accusations lodged against him. Nonetheless, Defendant, without seeking input from Mr. Jones as to the veracity of the purported factual allegations lodged against him, terminated him and instructed him to return his keys and any other company property.

58.     By not returning Plaintiff to the same or similar position upon his return from FMLA medical leave, Defendant interfered with Plaintiff's FMLA rights and/or retaliated against him for exercising his right to use such medical leave. Further, Defendant retaliated against

Plaintiff for exercising or attempting to exercise his FMLA rights when it terminated his employment under the guise of a false accusation.

59.     Moreover, Mr. Jones was unlawfully terminated on or about January 27, 2021 because of his disability (actual or perceived) and/or in retaliation for engaging in protected activity, including, but not limited to requesting an accommodation in the form of reasonable and definite medical leave as outlined above.

60.     At all times during his employment, Mr. Jones was qualified to perform the essential functions of his job with or without reasonable accommodation.

## III.  COLLECTIVE ACTION ALLEGATIONS

### A. 216(b) Collective Action for Unpaid Overtime Wages.

61.     Named Plaintiff brings his FLSA claims pursuant to 29 U.S.C. § 216(b) as a representative action on behalf of himself and all other similarly situated employees of the opt-in class, consisting of:

> All current and former hourly, non-exempt employees of Defendant, whose payroll records reflect that they worked 40 or more hours in any workweek beginning three years preceding the filing date of this Complaint and continuing through the date of final disposition of this case (the "§ 216(b) Collective Class" or the "§ 216(b) Collective Class Members").

62.     This FLSA claim is brought as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for overtime compensation withheld in violation of the FLSA, liquidated damages, and attorneys' fees.

63.     In addition to the Named Plaintiff, the putative § 216(b) Collective Class Members have been denied overtime compensation due to Defendant's company-wide payroll policies and/or practices of not fully and properly compensating its employees all overtime compensation because (1) it failed to pay them at the proper overtime rate during workweeks when they worked

more than forty (40) hours per workweek and they earned their Base Hourly Wage and Additional Remuneration and/or (2) Defendant's Automatic Meal Deduction Policy results in unpaid overtime compensation in in one or more workweeks when they work forty (40) or more hours because they did not receive a bona fide meal period as required under the law. The Named Plaintiff is representative of those other similarly situated employees and is acting on behalf of their interests as well as his own in bringing this action.

64. The identity of the putative § 216(b) Collective Class Members are known to Defendant or are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action and allowed to opt-in to it pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA.

65. The net effect of Defendant's policies and practices is that Defendant willfully failed to fully and properly pay Named Plaintiff and § 216(b) Collective Class Members overtime wages. Thus, Defendant enjoyed substantial profits at the expense of the Named Plaintiff and § 216(b) Collective Class Members.

**B. Fed. R. Civ. P. 23 Class Action for Unpaid Overtime Wages.**

66. Named Plaintiff also brings his Ohio Wage Act claims pursuant to Fed. R. Civ. P. 23 as a class action on behalf of himself and all other similarly situated of the following class, consisting of:

> All current and former hourly, non-exempt employees of Defendant working in Ohio, whose payroll records reflect that they worked 40 hours in any workweek beginning two years preceding the filing date of this Complaint and continuing through the date of final disposition of this case (the "Ohio Rule 23 Class", the "Rule 23 Class", or the "Ohio Rule 23 Class Members").

67. During relevant times, Named Plaintiff and those Ohio Rule 23 Class Members have been denied overtime compensation due to Defendant's company-wide payroll policies and/or practices of not fully and properly compensating its employees all overtime compensation because (1) it failed to pay them at the proper overtime rate during workweeks when they worked more than forty (40) hours per workweek and they earned their Base Hourly Wage and Additional Remuneration and/or (2) Defendant's Automatic Meal Deduction Policy results in unpaid overtime compensation in in one or more workweeks when they work forty (40) or more hours because they did not receive a bona fide meal period as required under the law. The Named Plaintiff is representative of those other similarly situated employees and is acting on behalf of their interests as well as his own in bringing this action.

68. The Ohio Rule 23 Class, as defined above, is so numerous that joinder of all members is impracticable.

69. Named Plaintiff is a member of the Ohio Rule 23 Class, whose claims for unpaid wages are typical of the claims of other members of the Ohio Rule 23 Class.

70. Named Plaintiff will fairly and adequately represent the Ohio Rule 23 Class and the interests of all members of the Ohio Rule 23 Class.

71. Named Plaintiff has no interest that is antagonistic to or in conflict with those interests of the Ohio Rule 23 Class that he has undertaken to represent.

72. Named Plaintiff has retained competent and experienced class action counsel who can ably represent the interests of the entire Ohio Rule 23 Class.

73. Questions of law and fact are common to the Ohio Rule 23 Class.

74. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1) because individual actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant with respect to its non-exempt employees.

75. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2), as Defendant acted or refused to act on grounds generally applicable to the Ohio Rule 23 Class, making appropriate declaratory and injunctive relief with respect to Named Plaintiff and the Ohio Rule 23 Class as a whole.

76. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3), as the questions of law and facts common to the Ohio Rule 23 Class predominate over questions affecting individual members of the Ohio Rule 23 Class and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

77. Questions of law and fact that are common to the Ohio Rule 23 Class include, but are not limited to: (a) whether Defendant violated the Ohio Wage Act by failing to pay the Ohio Rule 23 Class Members their correct overtime rate for all hours worked in excess of forty hours per week as a result of Defendant's failure to properly calculate the Ohio Rule 23 Class Members' regular rates of pay when they received Additional Remuneration; (b) whether Defendant violated the Ohio Wage Act by failing to fully pay the Ohio Rule 23 Class Members for hours worked in excess of forty hours per week as a result of its Automatic Meal Deduction Policy and/or practices described above; (c) whether Defendant's violations of the Ohio Wage Act were knowing and willful; (d) what amount of unpaid and/or withheld overtime compensation is due to the Named Plaintiff and other members of the Ohio Rule 23 Class on account of Defendant's violations of the Ohio Wage Act; and (e) what amount of prejudgment interest is due to Ohio Rule 23 Class members on the overtime or other compensation that was withheld or not paid to them.

78.     A class action is superior to individual actions for the fair and efficient adjudication of Named Plaintiff's and the Ohio Rule 23 Class' claims and will prevent undue financial, administrative, and procedural burdens on the parties and the Court. Named Plaintiff and counsel are not aware of any pending Ohio litigation on behalf of the Ohio Rule 23 Class, as defined herein, or on behalf of any individual alleging a similar claim. Because the damages sustained by individual members are modest compared to the costs of individual litigation, it would be impractical for class members to pursue individual litigation against the Defendant to vindicate their rights. Certification of this case as a class action will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## IV.  <u>CAUSES OF ACTION</u>

<u>COUNT I</u>
**(FLSA – COLLECTIVE ACTION FOR UNPAID OVERTIME)**

79.     All of the preceding paragraphs are realleged as if fully rewritten herein.

80.     This claim is brought as part of a collective action by the Named Plaintiff on behalf of himself and the § 216(b) Collective Class Members.

81.     During the relevant time period preceding this Complaint, Defendant employed the Named Plaintiff and the § 216(b) Collective Class Members.

82.     Named Plaintiff and the § 216(b) Collective Class Members were paid on an hourly basis and they were employed in non-exempt positions during the relevant time period.

83.     Named Plaintiff and the § 216(b) Collective Class Members worked in excess of 40 hours in one or more workweeks during their employment.

84.     The FLSA requires that covered employees be compensated for every hour worked in a workweek.  *See* 29 U.S.C. § 206(b).

85. The FLSA requires that non-exempt employees receive overtime compensation of their regular rates of pay for hours worked in excess of forty (40) per week. *See* 29 U.S.C. § 207(a)(1).

86. Plaintiff and the § 216(b) Collective Class Members were not exempt from receiving FLSA overtime compensation.

87. Plaintiff and the § 216(b) Collective Class Members worked in excess of forty hours during one or more workweek(s) within the relevant time period described herein.

88. Defendant violated the FLSA with respect to Plaintiff and the § 216(b) Class by, *inter alia*, (1) failing to compensate them at one-and-one-half times their regular rates of pay for all hours worked over forty (40) hours in a workweek as outlined above and (2) failing to compensate them for all hours worked over 40 in one or more workweeks because of its Automatic Meal Deduction Policy.

89. Named Plaintiff and the § 216(b) Collective Class Members should have been paid the correct overtime rate for all hours worked in excess of forty hours per workweek during the three years prior to the filing of this Complaint.

90. Named Plaintiff and the § 216(b) Collective Class Members should have been paid for all overtime hours worked during the three years prior to the filing of this Complaint.

91. Defendant knew or should have known of the overtime payment requirements of the FLSA. Defendant willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and the § 216(b) Collective Class Members are entitled.

92. The exact total amount of overtime compensation that Defendant failed to pay the Named Plaintiff and the § 216(b) Collective Class Members is unknown at this time, as many of the records necessary to make such precise calculations are in Defendant's possession.

93.     As a direct and proximate result of Defendant's conduct, the Named Plaintiff and the §216(b) Collective Class Members have suffered and continue to suffer damages. The Named Plaintiff seeks unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available on behalf of himself and the § 216(b) Collective Class Members.

**COUNT II**
**(R.C. § 4111.03 – RULE 23 CLASS ACTION FOR UNPAID OVERTIME)**

94.     All of the preceding paragraphs are realleged as if fully rewritten herein.

95.     This claim is brought under Ohio law, which incorporates the FLSA without limitation.

96.     The Named Plaintiff and the Ohio Rule 23 Class Members have been employed by Defendant, and Defendant is an employer covered by the overtime requirements under Ohio law.

97.     Ohio law requires that employees receive overtime compensation "not less than one and one-half times" (1.5x) the employee's regular rate of pay for all hours worked over forty (40) in one workweek "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937."  *See* R.C. § 4111.03(A); 29 U.S.C. § 207(a)(1).

98.     The Named Plaintiff and Ohio Rule 23 Class worked in excess of the maximum weekly hours permitted under R.C. § 4111.03, but are owed unpaid overtime compensation because Defendant (1) failed to compensate them at one-and-one-half times their regular rates of pay for all hours worked over forty (40) hours in a workweek as outlined above and (2) failed to compensate them for all hours worked over 40 in one or more workweeks because of its Automatic Meal Deduction Policy as outlined above.

99.     The Named Plaintiff and Ohio Rule 23 Class worked in excess of the maximum weekly hours permitted under R.C. § 4111.03, but were not fully paid for all overtime hours worked because of Defendant's policies/practices as described herein.

100.     Defendant's company-wide corporate policies and/or practices as outlined herein resulted in unpaid overtime wages for the Named Plaintiff and Ohio Rule 23 Class.

101.     Named Plaintiff and those similarly situated Ohioans were not exempt from the wage protections of Ohio law.

102.     The Named Plaintiff and the Ohio Rule 23 Class were not exempt from the wage protections of Ohio law.

103.     Defendant's repeated and knowing failure to pay overtime wages to the Named Plaintiff and those similarly situated Ohioans were violations of R.C. § 4111.03, and, as such, Defendant acted willfully.

104.     For Defendant's violations of R.C. § 4111.03, by which the Named Plaintiff and those similarly situated Ohioans have suffered and continue to suffer damages, the Named Plaintiff and those similarly situated Ohioans seek unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available.

## COUNT III
### (R.C. § 4113.15 – RULE 23 CLASS ACTION FOR VIOLATIONS OF THE OHIO PROMPT PAY ACT)

105.     All of the preceding paragraphs are realleged as if fully rewritten herein.

106.     During relevant times, Named Plaintiff and the Ohio Rule 23 Class Members have been employed by Defendant.

107.     During relevant times, Defendant was an entity covered by the OPPA and the Named Plaintiff and the Ohio Rule 23 Class Members have been employed by Defendant within the meaning of the OPPA.

108.     The OPPA requires Defendant to pay Named Plaintiff and Ohio Rule 23 Class all wages, including unpaid overtime, on or before the first day of each month for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof and on or before the fifteenth day of each month for wages earned by them during the last half of the preceding calendar month. *See* R.C. § 4113.15(A).

109.     During relevant times, Named Plaintiff and the Ohio Rule 23 Class were not paid all wages for all hours worked, including overtime wages at one-and-one-half times their regular rate of pay as described herein within thirty (30) days of performing the work. *See* R.C. § 4113.15(B).

110.     The Named Plaintiff's and the Ohio Rule 23 Class Members' unpaid wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

111.     The Named Plaintiff and the Ohio Rule 23 Class Members have been harmed and continue to be harmed by such unpaid wages.

112.     In violating the OPPA, Defendant acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Ohio law.

## COUNT IV
### (FMLA Interference with Rights – 29 U.S.C. § 2615, *et seq.*)

113.     All of the preceding paragraphs are realleged as if fully rewritten herein.

114.     Plaintiff is a person employed by Defendant other than in domestic service for at least twelve (12) months and for at least 1,250 hours of service during the twelve (12) months before Defendant interfered with Plaintiff's FMLA rights as described above.

115.    At all times relevant, Defendant is an employer as defined by the FMLA under 29 U.S.C. § 261(4)(A)(ii)(I) because it is engaged in commerce or in any industry affecting commerce that employs or employed at least fifty (50) or more employees at or within a 75-mile radius of the Plaintiff's worksite for each working day during each of 20 or more calendar workweeks in the year of or the calendar year preceding the events giving rise to this cause of action.

116.    Pursuant to 29 U.S.C. § 2615(a)(1), it is unlawful for an employer to interfere with an employee's right to exercise FMLA leave.

117.    Pursuant to 29 U.S.C. § 2614(a)(1), an employer is required to reinstate an employee to her former position or equivalent position when she returns from leave. *See also* 29 C.F.R. § 825.214(a). An "equivalent position" is one that is "virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges and status." 29 C.F.R. § 825.215. It must also involve the "same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." *Id.*

118.    In addition, an "equivalent position" means that the employee is entitled to return to the same shift or the same or an equivalent work schedule.

119.    As described above, Defendant has willfully and/or recklessly interfered with, restrained, and/or denied Plaintiff's rights in violation of the FMLA, by taking the following non-exhaustive list of actions: (1) failing to reinstate him to the same or similar position in violation of 29 C.F.R. § 825.215; (2) terminating his employment; and (3) otherwise treating him less favorably than similarly situated employees who after reasonable opportunity for discovery do not suffer from a serious health condition and/or did not exercise or attempt to exercise their FMLA rights.

120.     By engaging in the foregoing conduct, Defendant has interfered with Plaintiff's exercise of his FMLA rights, in violation of 29 U.S.C. § 2615(a)(1).

121.     As a result of Defendant's interference, Plaintiff was harmed as outlined above and denied benefits to which he is entitled under the FMLA.

122.     Defendant lacked good faith to believe it had not violated the FMLA in its actions.

123.     As a direct a proximate result of Defendant's actions, Plaintiff has suffered damages, in accordance with 29 U.S.C. § 2617(a), and entitling him to reinstatement and to recover double his actual damages in liquidated damages, equitable relief as this Court may deem appropriate, interest, their attorneys' fees, and costs.

### <u>COUNT V</u>
**(FMLA Retaliation – 29 U.S.C. § 2615, *et seq*.)**

124.     All of the preceding paragraphs are realleged as if fully rewritten herein.

125.     As outlined above, Plaintiff exercised and/or attempted to exercise his rights under the FMLA, including medical leave for his serious health condition.

126.     However, Defendant retaliated against Plaintiff for attempting to and/or exercising his rights under the FMLA by engaging in the following non-exhaustive list of actions: (1) terminating his employment; and (2) otherwise treating him less favorably than similarly situated employees who after reasonable opportunity for discovery do not suffer from a serious health condition and/or did not exercise or attempt to exercise their FMLA rights.

127.     By engaging in the foregoing conduct, Defendant has retaliated against Plaintiff's exercise of his FMLA rights, in violation of 29 U.S.C. § 2615(a)(2).

128.     The Defendant's foregoing actions were taken in bad faith and without reasonable grounds for believing that their acts or omissions were not a violation of 29 U.S.C. § 2615, causing Plaintiff to be damaged and entitling him to reinstatement and to recover double his actual damages

in liquidated damages, equitable relief as this Court may deem appropriate, interest, their attorneys' fees, and costs.

## COUNT VI
### (Disability Discrimination - Ohio Revised Code § 4112.02, *et seq.*)

129. All the preceding paragraphs are realleged as if fully rewritten herein.

130. At all times relevant herein, Plaintiff was disabled, had a record of being disabled, or was regarded as being disabled as defined under Chapter 4112, *et seq.*

131. Plaintiff was able to perform the essential functions of his job despite his disability.

132. Defendant knew that Plaintiff was disabled and/or regarded him as disabled.

133. Defendant discriminated against Plaintiff because of his disability by taking the following non-exhaustive list of actions: (1) denying him reasonable accommodations, including medical leave for anticipated future appointments for his disability; (2) terminating his employment; and (3) otherwise treating him less favorably than similarly situated employees who after reasonable opportunity for discovery are not disabled, actual or perceived, and who do not have a record of a disability.

134. As such, Defendant has violated Chapter 4112, *et seq.*, by discriminating against Mr. Jones based on his actual or perceived disability or his record of being disabled.

135. By Defendant's foregoing omissions and commissions, Defendant violated Ohio Revised Code § 4112.02(A).

136. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages as outlined herein.

137. Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, reasonable attorneys' fees, costs, declaratory and injunctive relief, and all other relief available under Ohio law.

## COUNT VII
### (Retaliation – R.C. § 4112.02(I))

138.     All the preceding paragraphs are realleged as if fully rewritten herein.

139.     Plaintiff engaged in protected activity by requesting reasonable accommodations and/or using medical leave for his disability.

140.     Defendant knew that Plaintiff engaged in protected activity.

141.     Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: (1) denying him reasonable accommodations, including medical leave for anticipated future appointments for his disability; (2) terminating his employment; and (3) otherwise treating him less favorably than similarly situated employees who after reasonable opportunity for discovery are not disabled, actual or perceived, and who do not have a record of a disability.

142.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to emotional distress and the loss of compensation, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

143.     Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, reasonable attorneys' fees, costs, declaratory and injunctive relief, and all other relief available under Ohio law.

## V.  PRAYER FOR RELIEF

**WHEREFORE**, as to **Count I**, Named Plaintiff and other members of the § 216(b) Class pray for an Order against Defendant as follows:

A.     Certifying the proposed FLSA collective action;

B.      Directing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the § 216(b) Class apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA;

C.      A declaratory judgment that Defendant's payroll policies or practices as outlined above violates the FLSA;

D.      An order for injunctive relief, ordering Defendant to end all of the illegal wage policies and practices alleged herein pursuant to the FLSA and attendant regulations and requiring Defendant to follow such laws going forward;

E.      Judgment against Defendant for damages for all unpaid overtime compensation owed to Named Plaintiff and the § 216(b) Class during the applicable statutory period under the FLSA and continuing through trial;

F.      Judgment against Defendant for liquidated damages pursuant to the FLSA in an amount equal to all unpaid overtime compensation owed to Named Plaintiff and all other similarly situated employees during the applicable statutory period under the FLSA and continuing through trial;

G.      Directing Defendant to pay reasonable attorneys' fees and all costs connected with this action;

H.      Leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

I.      Ordering Defendant to pay pre-judgment interest and post-judgment interest;

J.      Judgment for all civil penalties to which Named Plaintiff and all other similarly situated employees may be entitled; and

K.      Such other and further relief as to this Court may deem necessary, just, or proper.

**WHEREFORE**, as to **Counts II** and **III**, Named Plaintiff requests judgment against Defendant for violations of the Ohio Acts and for an Order as follows:

L.    A declaratory judgment that Defendant's wage and hour policies and practices as alleged herein violate the Ohio Wage Act with respect to the non-payment of certain overtime compensation and violations of the OPPA;

M.    An order for injunctive relief ordering Defendant to end all of the illegal wage policies and practices alleged herein pursuant to the Ohio Wage Act and the OPPA and requiring Defendant to follow such laws going forward;

N.    An Order certifying the proposed Ohio Rule 23 Class under the Ohio Wage Act and the OPPA;

O.    Awarding to the Named Plaintiff and the Ohio Rule 23 Class Members unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by Ohio law;

P.    Ordering Defendant to pay pre-judgment interest and post-judgment interest;

Q.    Awarding Named Plaintiff and the Ohio Rule 23 Class Members costs, disbursements, and reasonable allowances for fees of counsel and experts and also reimbursement of expenses;

R.    Awarding judgment against Defendant for liquidated damages pursuant to the OPPA in an amount equal to six percent (6%) of all unpaid overtime compensation owed to the Named Plaintiff and the Ohio Rule 23 Class Members during the applicable statutory period or $200 for each pay period, whichever is higher; and

S.    Awarding Named Plaintiff and the Ohio Rule 23 Class Members such other and further relief as the Court deems necessary, just, or proper.

**WHEREFORE**, as to **Counts IV** through **VII**, Plaintiff requests judgment against Defendant for violations of the FMLA and Chapter 4112 and for an Order as follows:

T.      Ordering Defendant to pay monetary relief in an amount sufficient to compensate Plaintiff for the wages and benefits lost up to the time of his reinstatement or, if reinstatement is not feasible, future wages and benefits lost;

U.      Ordering Defendant to pay Plaintiff his compensatory damages;

V.      Ordering Defendant to pay liquidated damages in an amount equal to his compensatory damages;

W.      Order Defendant to pay punitive damages;

X.      Ordering Defendant to pay pre-judgment interest and post-judgment interest;

Y.      Awarding Plaintiff costs and reasonable attorneys' fees associated with this action; and

Z.      Directing such other and further relief as the Court may deem just or appropriate.

Respectfully submitted,

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman (0085586)
**Coffman Legal, LLC**
1550 Old Henderson Road, Suite 126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
**Bryant Legal, LLC**
1550 Old Henderson Road, Suite 126
Columbus, Ohio 43220
Phone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com

*Attorneys for Named Plaintiff and those similarly situated*

## <u>JURY DEMAND</u>

Plaintiff requests a trial by a jury of twelve (12) persons.

*/s/ Matthew J.P. Coffman*
Matthew J.P. Coffman