IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **LONNIE JONES**, on behalf of himself and others similarly situated, | : : : : |
| Plaintiff, | : Case No. 2:21-cv-01830 : |
| v. | : Judge Sarah D. Morrison : |
| **CONVERSE ELECTRIC, INC.**, | : Magistrate Judge Chelsey M. Vascura : |
| Defendant. | : : : |

*JOINT MOTION FOR APPROVAL OF SETTLEMENT AND
STIPULATION OF DISMISSAL WITH PREJUDICE*

## I.   INTRODUCTION

Representative Plaintiff Lonnie Jones ("Plaintiff," "Representative Plaintiff," or "Jones") and Defendant Converse Electric, Inc. ("Converse" or "Defendant") (Plaintiff and Defendant, collectively, the "Parties") respectfully move this Court to approve the proposed settlement reached by the Parties and memorialized in the Joint Stipulation of Settlement and Release ("Settlement Agreement") attached as Exhibit A.

The proposed resolution will resolve bona fide disputes involving alleged unpaid compensation claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.03 ("Ohio Wage Act"), and the Ohio Prompt Pay Act, O.R.C. § 4113.15 ("OPPA") (Ohio Wage Act and OPPA collectively, "Ohio Acts"). In particular, Plaintiff asserted that Defendant failed to pay Plaintiff and other alleged similarly-situated associates for alleged interrupted and/or missed meal periods and failed to pay at the correct regular rate of pay during workweeks when they received additional remuneration

resulting in unpaid overtime during one or more workweeks when Plaintiff and other hourly workers worked over 40 hours.

The Parties respectfully submit that the proposed resolution is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA.  The Settlement Agreement was achieved during the course of several months of arms-length negotiations among the Parties, conducted by experienced counsel, and reached on October 6, 2022.  If approved by the Court, the Settlement Agreement will make settlement payments to Plaintiff and the individual collective members who have joined this action.

The settlement documents submitted for approval or entry by the Court consist of the following:

    Exhibit A:    Joint Stipulation of Settlement and Release

    Exhibit B:    Declaration of Daniel I. Bryant

    Exhibit C:    [Proposed] Order Granting Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice

The following sections explain the nature of this action, the negotiations, the principal terms of the Settlement Agreement, and the propriety of approving the Settlement Agreement and its proposed distributions of settlement proceeds. For the reasons set forth below, the Parties respectfully request that this Honorable Court approve the proposed Settlement Agreement reached by the Parties and dismiss this case with prejudice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Action

On April 14, 2021, Representative Plaintiff filed this action as a collective action under the FLSA and the Ohio Acts and primarily alleged[1] that Defendant failed to pay Plaintiff and other alleged similarly-situated hourly associates' overtime for hours worked over 40 in a workweek in violation of the FLSA as well as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy alleged violations of the Ohio Acts. (ECF No. 1.) In particular, Plaintiff alleged that Defendant failed to pay him all overtime compensation due to (1) failure to pay at the correct regular rate of pay during workweeks when he and others received reimbursements for expenses incurred for Defendant's benefit in the form of cell phone allowances ("Additional Remuneration"); and (2) failure to pay Plaintiff and others for interrupted or missed meal periods that were thirty (30) minutes in duration ("30-Minute Unpaid Meal Period Policy"). (*Id*., at PAGEID # 6-7.) Defendant denied the allegations and asserted various affirmative defenses, including that its actions were at all times lawful under the FLSA and Ohio law and its policies/practices were conducted in good faith. (ECF No. 3, PAGEID # 48.) During July and August, 2021, two additional plaintiffs[2] opted into the lawsuit as Opt-In Plaintiffs. (ECF Nos. 5 and 10.)

On August 3, 2021, Plaintiff filed his Pre-Discovery Motion for Conditional Certification and Court-Supervised Notice pursuant to 29 U.S.C. §216(b) ("Motion for Conditional Certification"). (ECF No. 11.) Plaintiff requested that the Court conditionally certify the action as a collective action and permit him to send Notice of the litigation and opt-in forms to all current and former hourly, non-exempt electricians/electrical technicians, electrical superintendents, electrical foreman, warehouse associates, and pre-fab employees and that notice be sent out to these workers. (ECF No. 11, PAGEID # 74.) On September 7, 2021, Defendant filed its Response

---

[1] Plaintiff Jones also included individual claims relating to his departure from Converse, but those claims are not part of the Parties' Joint Motion.
[2] Derrick Henry, Sr., and David Giddens.

In Opposition. (ECF No. 15.) In its Response in Opposition, Defendant argued Jones was not similarly situated to the proposed FLSA Collective Members and argued its policies and practices complied with the FLSA and Ohio Acts.

On October 29, 2021, this Court granted Plaintiff's Motion for Conditional Certification and held that Plaintiff met his lenient burden at stage one of an FLSA collection action. Thereafter, Notice was sent by mail and email to the conditionally certified collective, which included approximately 113 current and former hourly, non-exempt electricians/electrical technicians, electrical superintendents, electrical foreman, warehouse associates, and pre-fab employees during the three years preceding the date of the Pre-Discovery Motion was filed on August 3, 2021 for a 90-day Notice period. On February 28, 2022, the 90-day notice period ended and a total of eight (8) individuals opted into the lawsuit ("Opt-In Plaintiffs"). In total, there are nine (9) participants in this case, including Representative Plaintiff ("Opt-In Plaintiffs" and collectively with Jones, "Plaintiffs"). (Ex. A, Agreement, ¶ 4; Ex. B, Declaration of Daniel I. Bryant ("Bryant Decl."), ¶ 19.)

On December 9, 2021, Plaintiff filed his First Amended Complaint to add additional claims[3] relating to his departure from Defendant. (ECF No. 20.) On December 22, 2021, Defendant filed its Answer to the First Amended Complaint, continued to deny Plaintiff's allegations, raised affirmative defenses, and asserted Plaintiffs were not entitled to any compensation because they were appropriately paid for all hours worked. (ECF No. 21.)

B. **Negotiation of The Settlement**

---

[3] Plaintiff received his Notice of Right to Sue from the Equal Employment Opportunity Commission, so claims stemming from the Americans with Disabilities Act, as amended, 42 U.S.C. § 12112, *et seq.*, were added to the First Amended Complaint.

On May 11, 2022, Michael P. Karst of Kastner Westman & Wilkins, LLC, entered an appearance as additional counsel for Defendant. (ECF No. 27.) Beginning on or about June 7, 2022, the Parties commenced settlement communication focused on the nine (9) Plaintiffs. In doing so, the Parties engaged in an informal yet comprehensive exchange of information regarding Plaintiff's claims and Defendant's defenses to such claims. (Ex. B, Bryant Decl., ¶ 21) This included dates of employment and the time and pay data for Plaintiffs for a period of April 14, 2018 through the date of the latest pay period, which ended on May 29, 2022 ("Relevant Time Period"). (*Id*.) Plaintiff's Counsel engaged a Masters-level analyst to construct a damages model using the data produced by Defendant. (*Id*.) On or about August 3, 2022, Plaintiff presented a demand. (*Id*., ¶ 24) After multiple exchanges of arms-length negotiations, including bona fide disputes over the facts and legal analyses, the Parties reached an agreement to settle the action on October 6, 2022. (*Id*.) The Parties reached the proposed settlement in this matter after extensive research, payroll data analysis, legal debates, discussions, weighing of the risks of litigation from both sides, settlement correspondence, and after good faith bargaining. (*Id*.)

### C. The Settlement Terms

The Total Settlement Amount is Twenty-Seven Thousand and Zero Cents ($27,000), which sum will cover: (a) payments to Plaintiff and the Opt-In Plaintiffs for lost wages and liquidated damages (the "Individual Payments"); and (b) Plaintiff's attorneys' fees and expenses incurred in prosecuting this matter. (Ex. A, Settlement Agreement, ¶ 18-19; Ex. B, Bryant Decl., ¶ 25.)

As to the Individual Payments, Plaintiff maintained that the unpaid meal periods consisting of 30 minutes each day were either interrupted or missed entirely three (3) out of five (5) shifts per week, resulting in a maximum of 1 hour and 30 minutes of unpaid overtime per week due to the

30-minute Unpaid Meal Period Policy.[4] (Ex. B, Bryant Decl., ¶ 22.) Based on these assumptions, there was a maximum recovery of $19,423.23 in unpaid overtime. (*Id*.) Defendant maintained that Plaintiffs were not entitled to *any* compensation. (*Id*., ¶¶ 22-23) Further, Defendant alleged that its policies both complied with the FLSA and Ohio law and were conducted in good faith. (*Id*.) As such, it was uncertain whether Plaintiffs would recover anything. (*Id*.) On the other hand, Defendant faced the risk of liability for the full amount alleged to be owed to Plaintiffs. (*Id*.) Thirteen Thousand Dollars ($13,000) of the Total Settlement Amount of $27,000 will be divided into Individual Payments to the Plaintiffs calculated on a pro rata share of the number of workweeks when they worked overtime during the Relevant Time Period. (*Id*.; Ex. A, Settlement Agreement, ¶ 18-19 Ex. B, Bryant Decl., ¶ 21.)

The gross amount of the Individual Payments to each Plaintiff is as follows:

| Name | Amount |
|---|---|
| 1. Brian E. Hall | $790.61 |
| 2. Daniel A. Stanley | $31.65 |
| 3. David Giddens | $5,200.02 |
| 4. Derrick M. Henry | $527.07 |
| 5. Donald E. Upshaw | $3,094.19 |
| 6. Gregory Thomas | $537.62 |
| 7. Lonnie Jones | $2,099.00 |
| 8. Michael McCoy | $54.21 |
| 9. Terry Harsh | $665.62 |
| **Total:** | $13,000.00 |

Based on the approximate amount of time Plaintiffs allege they are owed during the Relevant Time Period and faced with the risk factors of possibly receiving nothing, Plaintiffs

---

[4] The Parties disagreed on every point regarding the allegations that Defendant failed to pay at the correct regular rate of pay. As such, the Parties agreed to disagree with their respective legal positions and focus their efforts on the allegations of unpaid overtime due to the 30-minute Unpaid Meal Period Policy.

believe that, even after deducting attorneys' fees and costs, they will still receive a value of 66.9%[5] of their total alleged unpaid overtime wages during the Relevant Time Period. (Ex. A, Settlement Agreement, ¶ 19; Ex. B, Bryant Dec., ¶ 28.) In other words, Plaintiffs will receive a value of sixty (60) minutes of alleged unpaid overtime compensation per week. (*Id.*) While some individuals' payments may be modest due to an Opt-in Plaintiff's length of employment and/or that an Opt-in Plaintiff may only have worked one overtime workweek, payments range from $31 up to over $5,200, which is an average payment of $1,444.44. (*Id.*) Defendant disputes that Plaintiffs' meal periods were interrupted or missed at all and vigorously maintains that the Plaintiff and Opt-In Plaintiffs are owed zero dollars because their policies comply with the FLSA and were made in good faith. (*Id.*)

Defendant shall allocate 50% of each Plaintiff's Individual Payment to alleged lost wage damages, and this amount will be subject to all legally required withholding and reported on IRS Form W-2. (Ex. A, Settlement Agreement, ¶ 20-21) It shall also allocate the remaining 50% of each Plaintiff's Individual Payment to alleged liquidated damages, and this amount will be reported on IRS Form 1099. (*Id.*) Any Individual Payments to Plaintiffs that are not cashed within one hundred eighty (180) days will revert back Defendant, any uncashed settlement checks will be submitted to the Ohio Division of Unclaimed Funds, and the Agreement shall remain binding on Plaintiff or any Opt-In Plaintiffs who failed to cash their Individual Payment check. (*Id.*, ¶ 23.)

Nine Thousand Dollars ($9,000.00), which is equivalent to 1/3 of the Total Settlement Amount, will be paid to Plaintiffs' Counsel for attorneys' fees. (Ex. A, Settlement Agreement, ¶

---

[5] This percentage of the likely recovery was calculated by dividing $13,000 by the maximum alleged unpaid overtime of $19,423.23. The $13,000 recovery is equivalent to over 1 hour per week in unpaid overtime during workweeks when they worked over 40 hours.

21; Ex. B, Bryant Decl., ¶ 29.) Five Thousand Dollars ($5,000.00) will be paid to Plaintiffs' Counsel for expenses incurred in this action. (*Id.*)

In exchange for the Total Settlement Amount and other consideration provided for in the Agreement, Representative Plaintiff and Opt-In Plaintiffs will release Defendant from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action that were asserted, or could have been asserted, under the FLSA, the Ohio Acts, or any other applicable federal, state or local wage-and-hour law relating to unpaid and/or untimely payment of wages, overtime, or compensation of any kind, any related common law and equitable claims (e.g., breach of contract, unjust enrichment, etc.), and any claims for liquidated damages, attorneys' fees, costs, expenses, penalties, interest, settlement administration costs, and service awards. (Ex. A, ¶ 22; Ex. B, Bryant Decl., ¶ 39.) The parties stipulate that upon approval of this motion, the Court shall dismiss this action with prejudice.

## III. THE PROPRIETY OF APPROVAL

The proposed Settlement Agreement is subject to approval by the Court pursuant to the FLSA, 29 U.S.C. § 216(b). Court approval is warranted.

### A. The Seven-Factor Standard Is Satisfied

The court presiding over the settlement of an FLSA collective action may approve a proposed settlement if it finds that the settlement is "fair, reasonable, and adequate." *Satterly v. Airstream, Inc.*, No. 3:19-cv-32, 2020 WL 6536342, at *4 (S.D. Ohio Sep. 25, 2020) (citing *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). A district court looks to seven factors in determining whether a class action settlement is fair, reasonable, and adequate:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Id.*

As set forth below, the demonstrates that approval is warranted.

### 1. No Indicia of Fraud or Collusion

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Satterly*, 2020 WL 6536342, at *4 (citing *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018) (Watson, J.). Here, the Settlement Agreement was achieved only after the Parties disagreed on multiple bona fide disputes. Further, over a month of arms-length and good faith negotiations between the Parties occurred following each Party's opportunity to evaluate Defendant's time and payroll data to determine the potential damages at issue if this case were to continue. As such, there is no indicia of fraud or collusion and this factor favors approval of the settlement.

### 2. Complexity, Expense and Duration of Litigation Favor Approval

The policy favoring the settlement of collective actions applies here. Wage-and-hour cases are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them. *Gresky v. Checker Notions Co. Inc.*, No. 3:21-CV-01203, 2022 WL 3700739, at *5 (N.D. Ohio Aug. 26, 2022) (citing *Satterly*, 2020 WL 6536342, at *5). Moreover, the Parties disagree over the merits of Plaintiff's claims, including whether the meal periods were interrupted or missed at all, whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies, and whether Plaintiff and the Opt-In Plaintiffs would be entitled to liquidated damages if they were to prevail on the merits. As noted above, the Parties wholeheartedly disagreed with their respective positions relating to unpaid overtime due to the failure to pay at the correct regular rate of pay.

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Settlement Agreement, on the other hand, provides substantial relief

to the Plaintiff and the Opt-In Plaintiffs promptly and efficiently, and now instead of some unknown time possibly far off in the future.

### 3. Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement. Defendant produced time and payroll records, and Plaintiff's Counsel used those same records to retain a Masters-level analyst to create a damages model. Both parties also conducted their own independent investigations of Plaintiff's allegations and claims. As such, both of the Parties were able to perform a detailed analysis of the risks and possible outcomes of this case and the potential damages should Plaintiff prevail on the claims, which allowed the Parties to negotiate a settlement based on facts and data. Additionally, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides.

### 4. The Risks of Litigation Favor Approval

Counsel for both sides believe in the merits of their clients' positions, but also recognize that protracted litigation will be uncertain in terms of duration, cost, and result. Moreover, Defendant raises defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well. Accordingly, if this case is not settled, it is possible that Plaintiff and the Opt-In Plaintiffs would receive no compensation or, if they do receive compensation, it will be after protracted litigation, likely also involving appeals. By settling the case at this relatively early stage of the litigation, the Parties bypass the inherent risks of litigation and achieve finality on this matter. This factor favors approval of the settlement. *Satterly*, 2020 WL 6536342 at *6 ("the settlement provides relief to the settlement class members and eliminates the risks that the Parties would otherwise bear if the litigation were to continue on for years, which favors this factor").

### 5. Class Counsel and the Plaintiff Favor Approval

As recently observed with respect to Plaintiff's Counsel, they "have extensive experience with complex litigation including litigating class actions, FLSA actions, and other wage and hour claims." *Gresky*, 2022 WL 3700739 at *6. "These attorneys are each experienced in wage-and-hour class and collective actions, have acted in good faith, and have represented their clients' best interests in reaching this Settlement." *Id*. The same is true here. Plaintiff's Counsel supports the Settlement as fair and reasonable, and in the best interest of Plaintiff and the class as a whole, as described in the Declaration of Daniel I. Bryant. Plaintiff also approves of the Settlement. "The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Satterly*, 2020 WL 6536342 at *7; *see also Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). Accordingly, this factor favors approval of the Settlement.

### 6. The Reaction of Absent Class Members

If the Court approves the settlement, only Plaintiff and the Opt-In Plaintiffs will be bound by the Agreement. Those that did not join the case will not.

### 7. The Public Interest

As the Sixth Circuit recently noted in another case involving the approval of an FLSA settlement, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). The public interest favors the settlement of collective/class action litigation, which is especially true in cases involving wage and hour claims because by their very nature, inherently implicate the public interest. *Gresky*, 2022 WL 3700739, at *6 (citing *Wright*, 2018 WL 3966253, at *5).

Here, rather than risk the uncertainty of continued litigation, the Settlement confers immediate benefits on the Plaintiff and Opt-In Plaintiffs, avoids the risks and expense of further litigation, and conserves judicial resources. Thus, the Court should find that this factor supports approval of the Settlement.

### B. The Settlement Payments Are Fair, Reasonable, and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable and adequate for Plaintiffs.

All proposed Individual Payments were calculated proportionally on each plaintiff's alleged overtime damages during the applicable period. If approved by the Court, the settlement will provide adequate payments to Plaintiffs for alleged unpaid overtime compensation. As described in the Declaration of Daniel I. Bryant, based upon Plaintiff's calculations, Plaintiffs will receive Individual Payments that exceed the value of 66.9% out of the total allegedly unpaid work Plaintiffs maintain they are owed during the Relevant Time Period, which is equivalent to 1 hour of unpaid overtime per week during the relevant time period of April 14, 2018 to May 29, 2022. (*See* Ex. A, ¶ 19; Ex. B, Bryant Decl., ¶ 28.) Defendant maintains that Plaintiffs are not entitled to any compensation. (*Id*.) Accordingly, the settlement proceeds are fair, reasonable and adequate.

### D. Plaintiffs' Counsel's Fees and Expenses Are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour

grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)). *Accord*, *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *28 (the fee award must be "adequate to attract competent counsel but … not produce a windfall) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

In *Gascho v. Global Fitness Holdings, Inc.*, 822 F.3d 269 (6th Cir. 2016), the Sixth Circuit reaffirmed its long-standing rule regarding class- and collective-action fee awards. "When awarding attorney's fees in a class action," *Gascho* emphasized, "a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho*, 822 F.3d at 279 (quoting *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). Court have discretion to select the appropriate method of determining such fees "in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Gascho*, 822 F.3d at 279 (citing *Rawlings*, 9 F.3d at 516).

The percentage approach "more accurately reflects the results achieved." *Rawlings*, 9 F.3d at 516, *quoted with approval in Gascho*, 822 F.3d at 279-80. It is appropriate in cases like this one because "it encourages early settlement, which avoids protracted litigation." *Gascho*, 822 F.3d at 279 (citing *Rawlings*, 9 F.3d at 516-17).

This Court, and other courts in the Sixth Circuit, commonly approve one-third fee awards in FLSA collective actions because 1/3 of the settlement is a "normal fee amount in a wage and hour case." *Satterly*, 2020 WL 6536342, at *10 (quoting *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (Rice, J.)). *See, e.g.*, *Adams v. Frontier R.R. Servs., LLC*, No. 2:19-CV-808, 2020 WL 9936704, at *2 (S.D. Ohio June

15, 2020) (finding attorneys' fees in the amount of one-third of the total settlement amount are reasonable); *Campbell v. Wise Med. Staffing, Inc.*, No. 2:18-CV-00493, 2020 WL 9259704, at *2 (S.D. Ohio Feb. 21, 2020) (Morrison, J.) (same); *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-CV-852, 2019 WL 4574509, at *8 (S.D. Ohio Sept. 20, 2019) (Morrison, J.) ("33% is typical for attorney's fees in common fund, FLSA collective actions in this District.")); *Bailey v. Black Tie Management Co, LLC*, No. 2:19-cv-1677, 2020 WL 4673163, at *5 (S.D. Ohio Aug. 12, 2020) (Sargus, J); *Perkins v. Evolved, Inc.*, No. 2:16-cv-724, 2017 WL 2987220, at *1 (S.D. Ohio June 13, 2017) (Graham, J.).

In the Sixth Circuit, the recovery in wage and hour cases is typically 7-11%. *See Yorba v. Barrington Sch., LLC*, No. 2:21-CV-691, 2022 WL 2436952, at *5 (S.D. Ohio July 5, 2022) (Sargus, J.); *Smith v. SAC Wireless, LLC*, No. CV 20-10932, 2022 WL 1744785, at *3 (E.D. Mich. May 31, 2022) (Parker, J.) (citing *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1609, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) and Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (National Economic Research Assocs. (NERA) June 1995)). *See also Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010).

Measured by these standards, Plaintiff's Counsel contends that, based upon Plaintiffs' calculations, Individual Payments represent 66.9% of the full value of the approximate alleged unpaid overtime they could have recovered under the circumstances. (Ex. B, Bryant Decl., ¶ 28.) As noted above, payments range from $31 up to over $5,200, which is an average payment of $1,444.44. (*Id.*)

This amount easily exceeds the typical 7-11% recovery and, when compared to recent federal jurisprudence, has also been described as an excellent result. *See Harsh v. Kalida Mfg.*,

*Inc.*, No. 3:18-CV-2239, 2021 WL 4145720, at *3-9 (N.D. Ohio Sept. 13, 2021) (Helmick, J.) (describing recovery of 42% of the alleged overtime damages as an "excellent result" in the final approval Order because it represented "substantial relief" to the impacted individuals). Moreover, this Court approved an FLSA settlement where the individual payments represent 55% of wages allegedly owed. *See Vigna v. Emery Fed. Credit Union*, No. 1:15-CV-51, 2016 WL 7034237, at *2 (S.D. Ohio Dec. 2, 2016) (Watson, J.). Per the Settlement Agreement, Plaintiff requests payment of attorneys' fees to Plaintiffs' Counsel of one-third of the Total Settlement Amount, or Nine Thousand ($9,000.00). Consequently, just over one-third of the settlement is allocated to Plaintiff's Counsel to cover attorney's fees and litigation costs combined. (Ex A, Settlement Agreement, ¶ 21; Ex. B, Bryant Decl. ¶ 29.) That amount "reflects the results achieved." *Rawlings*, 9 F.3d at 516, *quoted with approval in Gascho*, 822 F.3d at 279-80. The settlement achieved by Plaintiffs' Counsel's efforts exceeds the threshold for what constitutes a substantial recovery for Plaintiffs as noted above.

In addition, Plaintiffs' Counsel is seeking Five Thousand ($5,000.00) in costs reasonably incurred in prosecuting this matter. (Ex A, Settlement Agreement, ¶ 21; Ex. B, Bryant Decl. ¶¶ 29, 37, and 52.)

### IV.   CONCLUSION

For the reasons addressed above, the Parties respectfully request that this Court approve the Settlement by entering the proposed Order Granting Joint Motion for Approval of Settlement and Stipulation of Dismissal with Prejudice attached as Exhibit C.

| **BRYANT LEGAL, LLC** | **KASTNER WESTMAN & WILKINS, LLC** |
|---|---|
| */s/ Daniel I. Bryant* | */s/ Michael P. Karst* |
| Daniel I. Bryant (0090859) | Michael P. Karst (0000000) |
| 1550 Old Henderson Road | 3550 West Market Street, Suite 100 |
| Suite 126 | Akron, Ohio 44333 |
| Columbus, Ohio 43220 | Phone: (330) 867-9998 |

Phone: 614-704-0546
Fax: 614-573-9826
Email: dbryant@bryantlegalllc.com

**COFFMAN LEGAL, LLC**

Matthew J.P. Coffman (0085586)
1550 Old Henderson Road
Suite 126
Columbus, Ohio 43220
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

*Attorneys for Representative Plaintiff and those similarly situated*

Fax: (330) 867-3786
Email: mkarst@kwwlaborlaw.com

*Attorneys for Defendant*

### CERTIFICATE OF SERVICE

      I hereby certify that on October 19, 2022, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

      */s/ Daniel I. Bryant*
      Daniel I. Bryant (0090859)

      *An Attorney for Named Plaintiff and those similarly situated*